241145 You may proceed. Good morning. May it please the court, my name is Kurt Parkins. I represent the appellant in this case, Gary Weidner. We're here today because One of the appellees, Claire McHale, is a pathological liar who manufactured a claim of sexual assault and was knowingly enabled by a detective to weaponize the criminal justice system against a former boyfriend. Despite those egregious facts, the lower court essentially found that Mr. Weidner had no viable legal avenue to relief for the immense harm that was done to him. The lower court... Well, I'm not sure that's what the ruling was. The ruling was it was inadequately...the theories that were advanced were not the legal avenue. Well, and I think...and that'll bring me to my first point in that they dismissed this at a very early level, at the 12B6 stage. And that was an error for two distinct reasons. The first, and foremost, is that despite it being clear that the law requires the lower court to accept the factual pleadings and the complaint as true, the court didn't apply that standard. The court actually failed to take notice of specific allegations that were noted in the complaint. And actually, in terms of some of the allegations, the court essentially rejected them, which the court at that level is not permitted to do. And I'd separate this briefly for a moment into the two separate appellees, Ms. Ames and Ms. McHale. When you're looking at the detective, there's a couple notes in the court's opinion, and I would direct the court to pages 16 and 17 of the appendix, which includes the amended complaint. The amended complaint clearly alleges that Detective Ames possessed information in the form of text messages which was wholly exculpatory. That's clearly pled. The court then goes on to say, well, is it clearly pled? I mean, the court has to accept well-pled factual allegations, but it doesn't have to accept conclusions of law or conclusory statements. That sounds like a conclusory statement, so does the complaint back it up and explore how this is totally exonerating? Well, I believe it does. What does it say about it? The complaint indicates that Ms. McHale presented this phone to defendant or appellee Ames and was showing her the text messages on the phone, cherry-picking ones that she believed furthered her claim. But the complaint goes on to allege that defendant or appellee Ames had the phone, had the ability to look through it, and that it contained exonerating information. Did Mr. Widener have the same exonerating communication on his phone, text between the two phones, I assume? Yes. He had those? Yes. Then why could he not, in his complaint, give us something other than a conclusion that it was exonerating? Why can't he give us details? Well, I think if you look at the appendix, a number of the messages were included in the sealed appendix and were before the court at the lower levels. They had the exonerating information. But we do talk about the exonerating information in the complaint. Point me to the paragraph. Sure. So if you go into, I believe it's in the appendix 16 through 17, paragraphs 42 through 50, in that vicinity of the amended complaint, and also earlier when it talks about the content of the text messages, it specifically says that Ms. McHale Widener basically said, I went through six or seven months with the appellant, and I was sexually assaulted on numerous occasions, and there was never a single time that it was consensual. I'm looking at those paragraphs. Where is there anything factual that's exonerating? So, Your Honor, if you go to the appendix, the amended complaint, specifically. You said 40 through 42. Is that right? Yes. So if you go to, it also talks about the specifics of the text messages, specifically that she had claimed that this was a six to seven month long ordeal where she was sexually assaulted in his hands numerous times and never, and never at any point in time did she have consensual sex with him. Well, you're jumping to something different. We're right now asking you to point us to the paragraphs in the amended complaint that show that the detective had knowledge that there were exculpatory emails on the phone and omitted that from the warrant affidavit. Sure. So if you go to appendix 16, starting in paragraph 34 of the amended complaint, where 34 talks about that she alleged that this was a course of conduct, and she made numerous claims that force was used, specifically that there were pictures taken, she provided pictures of her bruises, and that he choked her to effectuate the sexual assault. And what it goes on to say is what she specifically said was in the text messages, she's describing in the text messages how she likes having rough sex with him. Again, you're jumping, the question isn't whether it existed on the phone. The question is whether the detective was aware of the exculpatory information and willfully excluded that information from the warrant affidavit. And it is our position that she was aware of it, and that is pled in the complaint. Where? If you go to appendix 19, paragraph 68, specifically alleges that she knew that the information was false. Well, that's a legal conclusion. What facts? I mean, you don't have anything here that says that the detective saw these exculpatory emails and just decided, nonetheless, I'm going to get an arrest warrant against this guy. We believe that is in fact what she did. And at this point, we're at the 12B6 stage. We haven't been able to conduct discovery. And so the most we know now and can allege here is that the text messages were on the phone. That has been alleged. That the text messages were exonerated. That has been alleged. And the specifics of some of the text messages were laid out in the complaint. That Mikhail brought the cell phone to Detective Ames. That is pled in the complaint. That she opened it for her. That Detective Ames had the cell phone in her possession and ignored exculpatory information. That has all been pled. Did the detective seek Mr. Widener's views on this? The detective did seek Mr. Widener's views. And what do we make of that? If he has the messages and all of this exonerating information and chooses not to provide it to the detective, does that matter? I think at that point, when you're talking about an ongoing criminal investigation, you're basically, you know, expecting the defendant who has the right to remain silent to make a statement. So the answer is we shouldn't expect that. You shouldn't. Even for purposes of this lawsuit. Yes. And I was criminal counsel on the Allure case. So I can tell you, I think for a matter of well-practiced criminal defense, it would be malpractice to turn over the information prior to trial. Because they could just change the story and try to make it consistent with the information you have. I accept that. Just asking the question. And the next question is, I guess I want to define terms a little bit. So when you say exonerating, I assume that means did not rape? Yes. And yet, the detective certainly had the phone excerpts where at line 473 of the second, Mr. Widener says, I am so sorry. I am so sorry for raping you, Claire. I am so sorry. Why is that not arguable probable cause all by itself? Well, I think first of all, I think that that is not something that was appropriately considered by the lower court at the 12B6 stage. Okay. Well, let's assume that it is because your complaint references it.  So the calls, and our objection to the use of the calls is that you don't get from the cold transcript of the calls the essence of the call. Our position is that taken in its entirety when you listen, that's citing to about a 10-second clip on an hour-long call. I get that. I get that. And I get that in the first call there was talk about if you're not going to talk to me about it, I may go find someone else, and I want closure. Those could lead to a statement like that, and you can argue he's just trying to get rid of her, trying to quell the storm, even though it's not true or something. But if you're the detective and you have that, I am so sorry. I'm so sorry for raping you, Claire. How can that not be arguable probable cause? Well, the detective wasn't going to sell the transcript. She had obviously heard it and listened to it. And so she had all the information regarding that and the problems with it. And, again, this is what I'm saying. At this early stage, the 12B6 stage, our anticipation would be through discovery to have a psychiatric expert review those calls and render an opinion as to what's going on in the calls. If you take it claim by claim, the district court did what the district court's supposed to do, which is matched up your allegations with the elements of the claim. And for false arrest, it has to be without legal process. Would you agree where there's a warrant? It's with legal process? I do agree on that claim and not the other claims. OK, so that one's gone. Yes. OK. All right. And so what the court did is it looked through your allegations, just like we've been trying to do here, to see where you have alleged that the allegations of your complaint seem to say that McHale did not share with the detective the information that was exculpatory to your client. But in order for the detective to have intentionally falsified the warrant, she's got to know, right? She's got to be aware of the exculpatory information. Well, we have, and as I had indicated in paragraph 68, allege that. And I know it is somewhat of a general vermin. But at this stage, at the 12 to 16, states of mind can be. Sorry. Paragraph 68. That's those criminal proceedings were instituted without probable cause, with knowledge that no probable cause. Is that what you're saying? With knowledge that the probable cause was based on lies, that she knew that Ms. McHale was lying. Yeah, I mean. And I mean, that may be a general vermin, but at this stage, it's certainly. That's a general affirmative. States of mind. You cited a couple of other paragraphs, and I'm wondering about this. In 35 and 36, 36 alleges that McHale, at the time she claimed to have been raped, phone contained evidence that she was asking Plaintiff to come and have sex with her. Did Mr. Widener have access to Ms. McHale's phone to confirm that messages like that were there? He did not have access to her phone, but they were on his phone. When you say his. Mr. Widener's cell phone. Yeah, but I guess. All right. All right. With that, I'd like to say bless you. Moments of rebuttal. Thank you. For your eyes. My name is David Jaffa. Together with Kevin House, we represent Ms. Claire McHale. He's in the courtroom in the front row on the Pelley side of the courtroom. We also are this morning. I'm also arguing on behalf of Detective Ames, who is ably represented by Miss Rachel Morris, who's sitting at council table. She is the city attorney, the city of our value. There is no reason why this complaint should not have been dismissed. It was poorly drafted. It does not allege any plausible facts that would lead to plausibly acceptable claims. In fact, the claims himself will dispatch with that right away. The claims themselves are all very cursory. They follow the jury instructions for each and every one of the claims. It is the paradigm of just repeating what's there in a cursory fashion. And I will say, too, that the defamatory statement that counsel for Mr. Widener began with is simply not true. These were not lies. Ms. McHale was victimized. She was raped. She continues to be victimized through, A, the filing of the complaint in the district court, and this appeal against a very well-written, very well-thought-out order by Judge Wong. Well, we know the criminal prosecution collapsed mid-trial, which is not ordinary, and we know that information was revealed right before it collapsed, and we know that that information likely could have been revealed by a more robust investigation. What do we make of all of that? I appreciate your asking, Judge Phillips. The answer to that is even if it fell apart, the standard at that point and is alleged, one of the few allegations in the complaint that happens to be so, the prosecutor obviously felt he couldn't meet his burden of proof for reasonable doubt, which in and of itself is a completely different question than probable cause, which is the element in malicious prosecution. But as far as the investigation goes, the fact is, based on the court's questions earlier to Mr. Parkins, that rests with Mr. Widener. As Mr. Parkins told you, Judge Phillips, they made a strategic decision, the value of which can be debated, not to turn over that information. As she set forth in her affidavit in support of the arrest warrant, Detective Ames specifically called on Mr. Widener. He refused to speak. She then spoke with counsel for Mr. Widener, who also told her they weren't going to speak. Now, in any criminal case, of course, he has the right not to come forward, but there's two major points over here. What about the complainant's phone? Couldn't the detective have said, let me look at all the conversations? Sure, and I believe she did, and she had the phone. But as we argue in the brief, it's not up to her to look at everything on the phone. She looked at the phone. They had messages, and apparently they discussed it, but that's not alleged in the complaint. What is alleged is she didn't do a thorough investigation. So what does that mean? She contacted Mr. Widener. And back to your question, Judge Phillips. Mr. Widener made a strategic choice not to turn over things. Now, we all know Fifth Amendment, he has the right not to incriminate himself, but number one, he wasn't in custody. Number two, he could have easily turned over those things if he wanted to. Again, strategic decision. So what's the consequence? The consequence is in a civil case such as this, it most certainly can be used against him that he decided not to turn over that information. As in any criminal case, for instance, if a person is both being sued for whatever it is, let's say an employment situation, and he's being prosecuted for theft, by way of example, he has the right, of course, not to answer up anything in the civil case, but he does so with consequences. Certainly his right to be free from incriminating statements in the criminal matter has to be respected, and nothing can be commented about it. No inferences can be drawn. In a civil case, certainly negative inferences can be drawn by failing to answer. So when you ask about whether Ms. Detective Ames did a thorough investigation, I think she is allowed to draw a negative inference against Mr. Widener at that point when he refuses to either talk to her or turn things over. Not only that, but in the preliminary hearing in Colorado, in Jefferson County, there was an opportunity, and in fact, the defendant, Widener, availed himself of it to cross-examine Ms. Ames thoroughly. That transcript is part of the record, and appropriately so, because it's central to the complaint, as are the transcripts. I'll get back to that in a moment. That's central to the complaint, and is before the court in the appendix, as is Detective Ames' affidavit in support of arrest warrant, and is the ICON transcript, which lays out the transcript of proceedings in the criminal matter in Jefferson County, lays out everything the county court and district courts did. So it's not a problem that the case gets dismissed, at least not a problem for us, that the case gets dismissed midway through. Perhaps it's unusual, but as a legal matter, it is not relevant to a civil claim for malicious prosecution, because again, that's the... Counsel? Yes, Your Honor. You've covered a lot of ground, and I appreciate that, but could I refocus things a little bit back on the complaint? Of course you can. All right, let's look at the complaint. And I'm still curious about these paragraphs in the complaint, 35 and 36, and why that didn't survive. The fact that those allegations are there didn't allow the complaint to survive the dismissal on the challenge to the warrant. In other words, Mr. Widener wasn't contesting, as I understand it, that the affidavit on its face established probable cause, but it's whether Detective Ames included false information or omitted exculpatory information. It seems like those paragraphs would be exculpatory. So why doesn't that... Why isn't that a problem? Because, first of all, they're without sufficient detail. There's no time frame. Keep in mind that the crime charged charges the last couple of weeks of February 2020. There's no time frame here. And what time frames there are, except in one instance, talk about September to October of 2019 in Pennsylvania. So they're not even relevant to the malicious prosecution claim, which only has to do with the Colorado case, which was brought for a rape that occurred in February. 36 refers to Colorado. Okay. I mean, if Ames had that information and didn't put it in the affidavit, why wouldn't that be a problem for the affidavit? Well, first of all, I believe she makes reference in the pretext call. She refers in the pretext call to a couple of statements that Mr. Widener made that he either didn't know or he thought she had consented. That is in the affidavit, so that would take care of that. But more importantly, Your Honor, what Judge Wong did appropriately in those things where it's still a question of probable cause, all right, and so what she did was exclude those things that might have supported Mr. Widener's claims, and she included things that were alleged to be lies. And even with that, because we have, as Judge Phillips noted, almost at the beginning of Mr. Parkin's argument, a confession, and that confession carries a lot of weight. Now, I want to talk about that a minute if I may. Let me interrupt for a minute. So are you – is it your interpretation of paragraphs 35 and 36 that there has been an allegation in the complaint that Detective Ames was aware that that information was on the phone? No, and I appreciate you bringing it up, Judge McHugh, because that should have been my first answer. The question is, does Detective Ames know these things? The answer is no, and that goes back into a question, was her investigation – It's no because why didn't he know? Why didn't Detective Ames know? Why didn't Detective Ames know? Because she didn't have it in front of her. She had her phone, and what Mr. Widener is complaining about through Mr. Parkin's is that she didn't do an adequate investigation into the phone to find out if there were other text messages of the like, and there is no allegation here about what – there are allegations about what they discussed, but there's no allegation of specifically saying that Detective Ames requested to look at the phone. Okay, so this isn't the pretext call. No. These are the text messages. These are text messages allegedly exonerating Mr. Widener, and so Judge Wong deals with this in her order and specifically does what the case law suggests a district judge do on a 12-week basis. Okay, so let me make sure I'm understanding this. You're saying this doesn't matter because she, meaning Detective Ames, was not ever made aware of this particular text message? Correct.  Or text messages, and I mean, there's problems with these paragraphs, these allegations, because they are so vague. I mean, that is a problem. Well, I mean, but the bottom line is the allegations of the complaint are that the detective allowed Ms. McHale to cherry-pick various text messages and pictures and show them to the detective and didn't do a broader search of Ms. McHale's phone. That's how I understand the allegations. I think that is a way to read it. It is. Okay. But it's not sufficient in this case because that is not the standard on the 12B6. The 12B6, what I'm going to rephrase, Judge McHugh, your point, what Mr. Widener is complaining about is that Detective Ames didn't do a thorough enough investigation. The question is, is there probable cause? Is there sufficient evidence to believe a crime was committed? And the answer is yes. And there is nothing in the complaint that supports a malicious prosecution claim other than the bald-faced allegations that Ms. McHale and Detective Ames somehow got together to create this conspiracy. Before you run out of time, I want to ask you about the intentional infliction of emotional distress claim. Okay. Thank you. Which, if I'm remembering, is just against Ms. McHale. It is. In that claim, the district court threw it out because the allegations of the damages or the distress, the emotional distress, were not specific enough. But we've got a whole complaint that tells us, according to the complaint, that this man was falsely accused of rape and was prosecuted up to some point for that. I mean, what more do you have to say to say that I've suffered extreme emotional distress because, allegedly, you falsified this rape complaint? Okay. First of all, it was not falsified. There was plenty of probable cause. No, you have to take the complaint as true. As it is. Fair enough. So, I'll tell you what it is, Your Honor. You have to allege in an infliction of emotional distress claim, what's the emotional distress? In Colorado, and as Judge Wong pointed out in her order, there are specific things you have to allege. What happened? Did my hair fall out? Did I have physical manifestations of the emotional distress? What exactly occurred? That's what's lacking here. There is no allegation whatsoever of what happened to Mr. Widener as an alleged consequence. Amendment would not have been futile here, would it? He could have amended the complaint and specified, apparently, he spent some time in jail. I don't know how long he spent in jail. I know he says it's unfair. A day would be for emotional distress, right? I don't know. I don't know about that. So, that's the claim of the complaint where it looks to me like it's a pretty easy fix. It could have been, but Mr. Widener chose not to do so. He was given every opportunity to do so by the court, and he failed to do so. And I believe it would be futile because why didn't he allege? I mean, it's well known. He copies the jury instruction in his complaint, so why not just add in the things? I mean, the law is clear. You have to be specific about what the emotional distress is, and he wholly failed to lay it out. Can I just ask you one other thing? Was Ms. McHale's participation in the pretext calls, did that make her a state actor under Section 1983? No. No, because that call was simply listened to, was recorded by Detective Ames and listened to by Detective Ames, but it doesn't make her a state actor. And because one thing seems to be there was a lot of communication between Ms. McHale and Mr. Widener many other times, so perhaps if it would have been a one-time, maybe, but even then I don't think the nexus is reached. Thank you. Thank you, Your Honor. So obviously we ask for affirmation of the judge's order. Let's see. You have some time remaining. So it's a little astonishing, based on what you can see in the sealed appendix, that the claim is that there was an actual sexual assault here, especially given the dismissal. But beyond that, the most important thing that opposing counsel just said was she had the phone, and by she he's referring to Detective Ames. The phone was unlocked, open in front of her, and Ms. McHale was showing her things on it. That's the most important thing he admitted to, because with the case law, you can't turn a blind eye to exonerating information. In the Kuhl case, and I recognize that's from the Eighth Circuit, but I didn't see anything that was more on point here, they have a witness that has exonerating information, an eyewitness at the scene, and the cop just refuses to talk to them. That cop doesn't know she has exonerating information, but he refuses to talk to her, and that was a basis for the claim in that case, which here, very similarly, and we actually have alleged, if you look at 49, we've alleged that she should have looked at them, or in the alternative, it is believed and averred that at the time of the interview, Ames was in possession of the information that exonerated the plaintiff. We have alleged, based on what she did with the phone, I apologize, that she had the information. What about Mount Everest, which is to say he admitted raping her? You say exonerating evidence. I don't know what that would be. Is the detective supposed to assume that he's lying when he says that he raped her? Well, it's a totality of the circumstances analysis. Well, that's a big circumstance. I think in totality, and the text messages are equally big, and this is why I believe it's a fact issue. I'm still not even clear what the text messages are, but I don't know how they're going to exonerate against the confession of rape. One of the claims was, Your Honor, just to answer your question, sorry, that she says he submitted her to sexual assault by choking her, and the text messages say, choke me harder next time. I like it. Do it again. And just to Your Honor's point, I think the lower court under Frank and Phillips, which are cited in our brief, the lower court actually outright denied permission to amend on the constitutional claims, and I think it's clear that if the court intends to dismiss, they must grant leave to amend, and we could have them amended to include more of the text messages that weren't specifically cited. All right. Counsel, you're over time at this point. Thank you, Your Honor. Thank you. I think we've used up all our time, so we'll take the cases submitted. And, Counselor, excuse, thank you for your arguments this morning. You're okay, Your Honor.